IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JODY SIMMONS-OETTEL

    Plaintiff,

v.

INTERIORS, INC., and

TODD LEHMAN, and

TOM WILLIAMS

    Defendants.

No.

JURY TRIAL DEMANDED

# COMPLAINT

## INTRODUCTION

Jody Simmons-Oettel was employed by Interiors, Inc. for 38 years, over which time she received a series of promotions and became a minority shareholder. Oettel was terminated at age 61, shortly after she returned from work following knee replacement surgery, after she had first been demoted and replaced by a substantially younger employee, less than five months after Interiors, Inc. amended its Shareholder Agreement to mandate redemption of a terminated employee's Shares at Book Value, rather than Market Value. Oettel files this Complaint alleging age discrimination, disability discrimination, and breach of the fiduciary duty to a minority shareholder/shareholder oppression, and in support thereof avers as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over Counts I and II of this Complaint pursuant to 28 U. S. C. §1331, in that these claims are based upon laws of the United States of America, the Americans with Disabilities Act, 42 U.S.C. §12101, as amended by the ADA Amendments Act of 2008 ("ADA"); and the Age Discrimination in Employment Act, 29 U.S.C.

1

§621 ("ADEA"). This Court has supplemental jurisdiction over Count III pursuant to 28 U.S. Code §1367(a) which arises under the common law of the Commonwealth of Pennsylvania as it so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution, and the damages at issue in all three causes of action are interrelated.

2.   Venue is appropriate in this Court pursuant to 28 U. S. C. §1392(b) in that Defendants have ongoing business operations in this District, Plaintiff was employed in this District and a substantial part of the events giving rise to the claim occurred in this District.

3.   The amount in controversy exceeds $150,000.00, exclusive of interest and costs.

4.   Plaintiff has complied with the applicable administrative remedies by timely filing a Charge with the Equal Employment Opportunity Commission ("EEOC") on November 1, 2025, Charge no. 530-2026-01347, and simultaneously dual filing a Complaint with the Pennsylvania Human Relations Commission ("PHRC"), Case no. unknown.

5.   On December 11, 2025, the EEOC issued a Dismissal and Notice of Suit Rights, permitting Plaintiff to file her ADEA and ADA claims in this Complaint. Plaintiff intends to file an Amended Complaint to assert causes of action for age and disability discrimination under the Pennsylvania Human Relations Act, 43 P. S. §955(a) ("PHRA") upon receipt of applicable authority from the PHRC. Defendants Todd Lehman and Tom Williams, who are liable under Count III., infra., will also be personally liable for the PHRA claims as they aided and abetted age and disability discrimination.

## PARTIES

6.   Plaintiff Jody Simmons-Oettel ("Oettel") is an adult female who resides at 4 Apple Drive, Litiz, PA 17543 (Lancaster County).

7. Defendant Interiors, Inc. ("Interiors") is a Pennsylvania corporation that operates a principal place of business at 3130 Columbia Avenue, Lancaster, PA 17603.

8. Defendant Todd Lehman ("Lehman") is the majority Shareholder and former President and CEO of Interiors, who maintains a principal place of business at 3130 Columbia Avenue, Lancaster, PA 17603.

9. Defendant Tom Williams ("Williams") is the former Chief Financial Officer, and current President of Interiors and a Shareholder in Interiors, who maintains a principal place of business at 3130 Columbia Avenue, Lancaster, PA 17603.

10. At all times relevant hereto, Interiors was acting through Lehman and Williams.

## FACTUAL BACKGROUND

11. Oettel is presently 61 years of age.

12. In 1987, at age 23, Oettel commenced employment with Interiors, which was then doing business as, Interiors 2000, as a Merchandising Assistant.

13. As of 2003, Interiors began doing business as, Interiors Home.

14. Interiors operates a retail furniture business that also provides design services in Central Pennsylvania with three locations: Lancaster, York and Camp Hill.

15. Oettel received a series of promotions during her 38 year career at Interiors, first to Director of Marketing and Promotions, then in 1998 to Sales and Retail Store Manager.

16. In 1998, when Oettel was promoted to Sales and Retail Store Manager Interiors required Oettel to sign an Employment Agreement with a one year noncompete restriction within 20 miles of the Lancaster store.

17. In 2000, Interiors promoted Oettel to Vice President of Sales.

18. In 2015, Interiors promoted Oettel to Vice President Retail Sales and Marketing; a position that she held for ten years.

19. In 2020, Oettel was required to sign a new Employment Agreement with a two year noncompete restriction within 30 miles of any of the three Interiors locations.

20. As of April 2024, Interiors increased Oettel's annual salary from $126,500.00 to $140,000.00

### *Oettel Becomes a Shareholder in Interiors*

21. As of January 1, 2021, in conjunction with becoming a Shareholder, Oettel was required to sign a Shareholder Agreement that contains a restrictive covenant prohibiting her from being employed with any furniture-related business within a 30 mile radius of any Interiors retail location for three years after termination.

22. The 2021 Shareholder Agreement provided that under any circumstance where Interiors was required to purchase a Shareholder's shares, such as termination of employment, redemption was to be at Fair Market Value.

23. As of the year 2025, Oettel owned 33 shares of the outstanding shares of Interiors.

24. As of the year 2025, Lehman, the principal shareholder of Interiors owned 200 shares, 71% of the outstanding shares.

25. As of the year 2025, Williams owned 26 shares of Interiors.

### *Oettel's Need for Leave from Work and Surgery*

26. Oettel has a history of medical issues with her right knee that initially required a series of injections in 2023 and 2024.

27. At regular meetings with Lehman and Williams, Oettel discussed her knee condition, and the fact that she would most probably ultimately require surgery.

28. In January 2025, Oettel's physician advised her that she would require robotic surgery and a total knee replacement.

29. Upon learning of the need for a knee replacement, Oettel notified Lehman and Williams.

30. Oettel told Lehman and Williams that she was going to require a leave of absence from work, and that she would try to work on the best timing for the surgery to fit with Interiors' business needs.

31. Shortly after notifying Interiors about her need for a knee replacement, on February 17, 2025, Oettel was called to a meeting with Lehman and Williams at which time they advised Oettel that there were going to be "changes," and that her salary would be substantially reduced.

32. Prior to February 17, 2025, Lehman and Williams did not call for a Shareholder's meeting to discuss the "changes," and Oettel's reduction in salary.

### *The March 2025 Amendment to the Shareholder's Agreement*

33. Or about March 13, 2025, Lehman, the President and Chief Executive Officer, insisted on a First Amendment to the Shareholder's Agreement, whereby the redemption price for any Shareholder's shares was reduced to Book Value, as opposed to Fair Market Value

34. The First Amendment to the Shareholder's Agreement was later backdated to December 31, 2024.

### *Interiors Demotion of Oettel and Promotion of Linda Burke*

35. On March 31, 2025, Lehman issued a Memorandum ("the Lehman Memorandum") whereby Oettel was formally advised that she was being demoted to a position titled, "V. P. Marketing / Interior Design and Camp Hill Store Manager", with her annual salary reduced from $140,000.00 to $92,500.00, a reduction of 34%.

36. Lehman informed Oettel that her primary duties would be to manage the Marketing Department and transfer to the Camp Hill store to take over management of the team.

37. The transfer to the Camp Hill Store would require Oettel to drive one hour drive each way to Camp Hill from her home, as well as add substantial additional hours to her daily work schedule to open and close the store.

38. The demotion greatly diminished Oettel's responsibilities as sales oversight was being turned over to another employee, Linda Burke.

39. Oettel was advised that the transition would be drawn out over a period of time due to her surgery, leave from work, recovery, and inability to drive following surgery.

40. The Lehman Memorandum also addresses the health insurance that Interiors provided to Oettel and her spouse:

> Health Insurance Benefits
>
> As a shareholder in the company, Jody is eligible for the Standard Executive Health Insurance Package established in a note to shareholders on July 27th, 2022. Under this package, the company will pay the premium cost for a shareholder's individual health insurance coverage. This package also allows shareholders to add spouses to the company health insurance plan, however, the additional cost of spousal coverage that is paid by the company is to be included in the shareholder's compensation package. This Standard Executive Health Insurance Package can be changed at any time by the President, but, is scheduled for review and modification on June 30, 2025, at the end of our current health insurance policy period.
>
> At this time, Jody is receiving spousal health insurance coverage through the company health insurance plan at a cost of $ 1,361.96 per month.($16,344 per year). As the VP of Marketing/Design & Camp Hill Store Manager position and as a current shareholder of the company, Jody will continue to be eligible to receive this benefit of the Standard Executive Health Insurance Package with the understanding that this benefit could change at any time.

41.     A Job Description for Oettel's new position is attached to the Lehman Memorandum and provides:

> Physical Demands:
>
> - The physical demands described here are representative: of those that must be met by an employee to successfully perform the essentials functions of this job.
> - Ability to walk the showroom/sales floor and stand for long periods of time. Also, need to use/carry catalogs and fabric bundles easily. Need to lift accessories and light furniture to assist with customers' needs, pick-ups, or assist with floor work if needed.

### *Interiors Promotion of Linda Burke*

42.     On or about November 2020, Interiors hired Linda Burke ("Burke') as Warehouse Manager; approximately one year letter, Burke became VP Operations, overseeing Interiors delivery and service of furniture.

43.     Burke is eight years younger than Oettel.

44.     Burke does not suffer from any disability.

45.     Burke has not taken a leave from work during her employment with Interiors.

46.     Prior to February 17, 2025, Burke reported to Oettel for retail store and sales matters and Williams for operations matters.

47.     Burke is not a Shareholder in Interiors.

48.     When Interiors demoted Oettel, Lehman and Williams decided that Burke would be promoted to Chief Operating Officer, responsible for all sales functions and retail store operations, part of Oettel's former duties.

49.     Prior to February 17, 2025, Lehman and Williams did not call for a Shareholder's meeting to discuss Burke's promotion.

50. On April 1, 2025, Interiors through Williams issued a Confidential Memorandum ("the Williams Memorandum") that describes challenges facing Interiors, and announces changes in senior leadership, including Oettel's demotion and Burke's promotion to Chief Operating Officer.

51. The Williams Memorandum indicates, "Oettel is moving into the position of V.P. Marketing and Interior Design, which means she will be primarily responsible for marketing and store events, as well and growing and improving our interior design competency and training."

52. The Williams Memorandum also notes that Oettel "will be turning over the company's sales achievement responsibility to Linda Burke."

### *Oettel's Knee Replacement Surgery Leave and Return to Work*

53. On April 3, 2025, Oettel had knee replacement surgery.

54. After approximately two weeks, while officially out on leave, Oettel made herself available to answer questions and perform certain limited work from home.

55. Oettel was officially out of work until May 5, 2025, at which time she was released to work part-time, 4-5 hours per day, with restrictions that included, no pushing or pulling greater than 25 pounds, no bending or stooping, and no prolonged standing or walking; Oettel was also unable to drive her car.

56. On May 19, 2025, Oettel was released to return to work full-time with restrictions, that included no prolonged standing or walking; Oettel was able to use a cane.

57. Oettel provided Interiors with Return to Work forms from her treating physicians noting her restrictions.

58. When Oettel returned to full time status as of May 19, 2025, she was advised that she would not be taking over management of the Camp Hill store until the week following Interiors July 4th sale.

59. On June 17, 2025, Oettel attended an owners meeting where health insurance was discussed, including the rationale for changing from a PPO plan to a health savings account plan as a cost savings measure.

60. At the meeting Oettel was angry and noted that several months before, she was asked if she wanted to sell her shares and she felt very disappointed about what was happening at Interiors.

61. On July 9, 2025, Oettel was called to a meeting with Williams, who reiterated that executive leadership of all retail stores was transferred to Burke in the first quarter of 2025, that Oettel was working in a new capacity of Vice President of Marketing and Design, and that the plan was now for her to formally assume the Camp Hill Store Manager role after Interiors August Tent Sale.

62. Williams advised Oettel that she would have to embrace change, including having Burke as her boss, and her new role in the company.

63. Oettel, who needs to be employed, advised Williams that she had no intention of retiring and assured Williams that she would be willing to adapt and adjust as needed.

### *Interiors Terminates Oettel*

64. On August 12, 2025, Interiors terminated Oettel at age 61, at which time she had 38 consecutive years of devoted service.

65. Interiors advised Oettel that her position was "eliminated", and her employment was terminated effective immediately.

66. At the same time Oettel was given an Employee Separation Form that indicates:

> Reason for separation or termination?  REORGANIZATION: POSITION ELIMINATED
>
> Is employee covered under a standalone non-compete agreement?  YES

67. Interiors proffered reason for the termination is pretextual. Interiors terminated Oettel after it realized that despite the demotion she was not going to resign; and the decision to terminate Oettel was based upon Interiors' perceptions about her as a disabled, older employee, and its intention to replace her with a non-disabled, substantially younger employee.

### *Oettel's Shares in Interiors*

68. In a closely held corporation where there is no public market for stock and a shareholder is forced to sell shares, the valuation standard determines how much a departing Shareholder actually receives.

69. The Amendment to Interiors' Shareholder Agreement executed after March 13, 2025, changing valuation of Interiors shares from Fair Market Value to Book Value was part of a calculated plan to diminish the value of Oettel's shares when sold, at which time Oettel did not know that Interiors through Lehman and Williams was engaged in a premeditated plan to end Oettel's employment.

70. Changing the Share buyout standard from Fair Market Value to Book Value dramatically reduces the payout as Fair Market Value reflects the price at which a willing buyer and willing seller would agree, whereas, Book Value simply takes assets minus liabilities as recorded on the company's books and ignores goodwill, historical cost, fails to reflect future earnings, often undervalues real estate, and long-held assets, and can be manipulated by accounting choices such as depreciation, reserves, and expenses.

71. Interiors waited over one month after terminating Oettel until September 18, 2025 to send Oettel a Stock Redemption Agreement attempting to purchase Oettel's shares for $108,531.62, without any information whatsoever as to how it arrived at the valuation.

72. On September 23, 2025, Oettel sent an email to Lehman seeking financial information as to how Interiors determined the Book Value.

73. On September 26, 2025, Lehman provided Oettel with Interiors' calculation of the Book Value of her shares.

74. The financial criteria relied upon by Interiors to calculate Book Value deflates the true Book Value of Interiors.

75. As a consequence of Defendants' unlawful conduct, Oettel has suffered significant financial losses and substantial pain and suffering.

## COUNT I

### Jody Simmons Oettel v. Interiors, Inc.

**VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT**

**29 U. S. C. §621 et. seq.**

76. Paragraphs 1 to 75 are incorporated herein by reference, as if set forth in full.

77. Interiors has 20 or more employees and is subject to the ADEA.

78. In demoting and eventually terminating Oettel and having a substantially younger employee assume her duties, Interiors has treated Oettel less favorably than a substantially younger employee.

79. Interiors' actions were arbitrary and capricious, and based upon a discriminatory animus toward an older employee in the workplace.

80. Interiors' conduct is per se unlawful and constitutes unlawful age discrimination in violation of the ADEA.

81. As a direct result of the aforesaid unlawful discrimination, Oettel has sustained a loss of earnings, plus the value of certain employment benefits.

WHEREFORE, Plaintiff Jody Simmons-Oettel requests that this Court enter judgment in her favor and against Defendant Interiors, Inc., and that this Court award Plaintiff all damages available under the Age Discrimination in Employment Act, including monetary damages exceeding $150,000.00, in the form of all compensation and monetary losses, which Plaintiff has been denied, including back pay, front pay and prejudgment interest; reinstatement; ADEA liquidated damages; reasonable attorneys' fees; expert witness fees; costs; and any other relief which the court deems appropriate.

## COUNT II

### *Jody Simmons Oettel v. Interiors, Inc.*

**VIOLATION OF AMERICANS WITH DISABILITIES ACT, AS AMENDED BY THE ADA AMENDMENTS ACT OF 2008**
**42 U. S. C. §12101, et. seq**.

**DISABILITY DISCRIMINATION**

82. Paragraphs 1 to 81 are incorporated herein as if set forth in full.

83. Oettel has/had a disability in the form of a physical impairment that substantially limits/limited one or more major life activities as compared to the average person or most people in the general population.

84. As a consequence of her knee condition, Oettel is impacted in major life activities, including the functions of moving and walking.

85. Oettel's disability impacted her ability to work at certain times.

86. Oettel was qualified to perform her job duties throughout her employment at Interiors.

87. Oettel had a record of impairment.

88. Interiors also regarded Oettel as disabled.

89. Oettel suffered an adverse employment decision in the form of the demotion and eventual termination of her employment.

90. Upon Oettel's return from knee replacement surgery, she had physical restrictions that needed to be accommodated at the workplace.

91. Interiors has discriminated against Oettel based upon her disability and Interiors' perception that she is disabled.

92. In terminating Oettel, Interiors treated Oettel differently than another similarly situated individual who was not disabled, or whom Interiors did not regard as disabled.

WHEREFORE, Plaintiff Jody Simmons-Oettel requests that this Court enter judgment in her favor and against Defendant Interiors, Inc., and that this Court award Plaintiff all damages available under the Americans with Disabilities Act, as amended, including monetary damages exceeding $150,000.00, compensatory damages, punitive damages, reasonable attorneys' fees, reasonable expert witness fees, interest, costs, and any other relief which the Court deems appropriate.

## COUNT III

### Jody Simmons Oettel v. Todd Lehman and Tom Williams

**BREACH OF FIDUCIARY DUTY TO MINORITY SHAREHOLDER AND SHAREHOLDER OPPRESSION**

93. Oettel incorporates by reference paragraphs 1 to 92 herein as if set forth in full.

94. Interiors is a closely held corporation within the meaning of Pennsylvania law, with a small number of Shareholders and no public market for its shares.

95. Lehman and Williams owed fiduciary duties of loyalty, care, and good faith to Oettel as a minority shareholder in a closely held corporation.

96. In valuing shares at Book Value rather than Fair Market Value an employer creates a powerful freeze-out tool in a closely held corporation for controlling shareholders to use as a tool to terminate employment.

97. Lehman is the principal controlling shareholder of Interiors and owns at least 200 shares, 71% of the outstanding shares.

98. Lehman and Williams collectively own and control the vast majority of Interiors' voting shares.

99. Oettel had a reasonable expectation of continued employment and/or participation in Interiors' management; honest and fair treatment by the Lehman and Williams, the controlling majority Shareholders; and access to corporate information and decision-making.

100. Beginning in or around February 2025, Oettel was excluded from management and decision-making regarding "changes," at Interiors, such as substantially reducing Oettel's salary, demoting Oettel, and promoting Burke.

101. Beginning in or around February 2025, Lehman and Williams engaged in a course of conduct designed to freeze out and oppress Oettel, including but not limited to changing the manner in which Interiors values its shares from Fair Market Value to Book Value, demoting Oettel as part of a calculated plan to attempt to get Oettel to resign, and when it became apparent that she would not resign, terminate Oettel's employment without legitimate business justification.

102. Lehman and Williams breached their fiduciary duties by engaging in self-dealing at Oettel's expense; effectively freezing Oettel out of Interiors, and acting in their own interests, rather than the interests of Interiors and Oettel a minority Shareholder.

103. Oettel suffered damages as a direct and proximate result of Lehman and Williams breaching their fiduciary duties.

WHEREFORE, Plaintiff Jody Simmons-Oettel respectfully requests that this Court enter judgment in her favor against Defendants Todd Lehman and Tom Williams and enter an Order declaring that Defendants engaged in shareholder oppression, compelling the purchase of Oettel's shares at Fair Market Value as opposed to Book Value, without minority or marketability discounts; compensatory damages, punitive damages, pre-judgment and post-judgment interest; and all such other and further relief as the Court deems just and proper.

/S/ Andrew S. Abramson, Esq.
_____
Andrew S. Abramson, Esq.
Abramson Employment Law, LLC
790 Penllyn Pike
Suite 205
Blue Bell, PA 19422
telephone: 267-470-4742
email: asa@aemploylaw.com

Attorney for Plaintiff Jody Simmons-Oettel

Date: January 27, 2026